RECEIVED
IN LAKE CHARLES, LA

FEB 16 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| ELLA MAE MILLER BOOTH | : | DOCKET NO. 2:06 CV 2149 |
| VERSUS | : | JUDGE MINALDI |
| LOUISIANA CITIZENS COASTAL PLAN, ET AL | : | MAGISTRATE JUDGE WILSON |

## REPORT AND RECOMMENDATION

Presently before the court is Plaintiff's motion to remand. (Doc. 10). It has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Ella Mae Miller Booth, filed this action in the 38th Judicial District Court for Cameron Parish, Louisiana. She seeks to recover benefits, penalties and attorney fees from the defendant property insurers due to damages to her property caused by Hurricane Rita. Louisiana Citizens Coastal Plan ("Citizens") is a domestic insurer that insured Plaintiff's property located at Grand Chenier in Cameron Parish. State Farm Fire and Casualty Company ("State Farm") is a foreign insurer that insured another property owned by Plaintiff located at Grand Chenier in Cameron Parish. It is alleged that the improvements and contents on both properties were destroyed by covered perils, and that Defendants are obligated to pay the policy limits on their respective policies.

State Farm was served on October 11, 2006, and removed the case to this court on November 13, 2006. (Doc. 7). Plaintiff timely filed the motion to remand presently before the

court. Plaintiff first urges that the notice of removal was untimely filed. The parties agree that State Farm had thirty days from service within which to file the notice of removal. 28 U.S.C. § 1446(b). The thirtieth day fell on Friday, November 10, 2006. However, that was a legal holiday–Veteran's Day. Therefore, it is not included in the thirty days allowed for the filing of the notice of removal. Fed.R.Civ.P. 6(a). The last day for filing the notice of removal was Monday, November, 13, 2006; the day the notice was filed. The notice of removal was timely.

Plaintiff also seeks remand on the basis that one of the served defendants, Citizens, failed to join in or consent to the removal. "[A]s a general rule, removal requires the consent of all co-defendants." *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 815 (5th Cir. 1993).[1] However, it is not necessary to obtain the consent of fraudulently/improperly joined defendants. *Id.* Fraudulent/improper joinder is clearly recognized in two situations: (1) where there is actual fraud in the pleading of jurisdictional facts; and (2) where there is "no reasonable basis" for the district court to predict that the plaintiff might recover against the in-state/non-diverse defendant. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)(*en banc*), *cert. denied by*, *Illinois Cent. R. Co. v. Smallwood*, ___ U.S. ___, 125 S.Ct. 1825 (4/18/2005)(*citing, Travis v. Irby*, 326 F.3d 644 (5th Cir. 2003)).[2] Neither of these situations is implicated in the present case. Instead State Farm relies on a third category of fraudulent joinder commonly referred to as

---

[1] Notably, if Citizens presence is to be considered it would also destroy this court's subject matter jurisdiction.

[2] Traditionally the term used to refer to these situations was "fraudulent joinder." The Fifth Circuit now also refers to "fraudulent joinder" as "improper joinder." See *Smallwood, supra* at 571 n.1. Obviously, this leads to some confusion. In this report and recommendation "fraudulent/improper joinder is used to refer to the tradition "fraudulent joinder." "Fraudulent misjoinder" is used to refer to improper joinder or cumulation of claims.

2

fraudulent misjoinder.

Fraudulent misjoinder doctrine finds its roots in the case of *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996). In *Tapscott* plaintiffs brought a state putative class action against diverse and non-diverse defendants alleging statutory fraud in connection with the sale of automobile service contracts. The complaint was then amended to add putative class claims by two new plaintiffs against a new diverse defendant, Lowes, based on the sale of retail product service contracts. Lowes removed the action to federal court. The district court found that the claims against Lowes had been fraudulently joined to the other claims. It then severed the claims against Lowes and remanded the other claims to state court. In affirming the 11th Circuit stated:

> Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action. A defendant's right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy. . . . We hold that the district court did not err in finding an attempt to defeat diversity jurisdiction by fraudulent joinder. We do not hold that mere misjoinder is fraudulent joinder, but we do agree with the district court that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder. (internal quotes and citation omitted).

*Tapscott, supra* at 1360.

The Fifth Circuit has indicated that it agrees, at least in principle, with the concept of fraudulent misjoinder established by *Tapscott*. *In re: Benjamin Moore & Co.*, 309 F.3d 296 (5th Cir. 2002) (". . . it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity jurisdiction." *Citing Tapscott*); *In re: Benjamin Moore & Co.*, 318 F.3d 626, 630 (5th Cir. 2002) (". . . without detracting from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to

3

circumvent diversity jurisdiction, we do not reach its application in this case."). However, a recent decision of the Fifth Circuit has led this court to conclude that a fraudulent misjoinder doctrine is not applicable in the present case.

In *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529 (5th Cir. 2006) the state court had, over the plaintiffs' objection, severed the plaintiffs' improperly joined claims against the non-diverse defendants from the claims against the diverse defendant. The diverse defendant then removed the action against it to federal court. Plaintiffs contended that removal was improper due to the fact that complete diversity had not been created through a voluntary act of the plaintiffs. Under the judicially-created "voluntary-involuntary" rule an action that is nonremovable when commenced becomes removable thereafter only by the voluntary act of the plaintiff. *Id.* at 532 (*citing Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 547 (5th Cir. 1967)). In rejecting Plaintiffs' argument the court noted that the courts had long recognized an exception to the voluntary-involuntary rule where the non-diverse defendant was fraudulently/improperly joined. The court went on to hold that this exception also extended to cases of misjoinder stating:

> The fraudulent joinder exception to the voluntary-involuntary rule is designed to prevent plaintiffs from blocking removal by joining nondiverse and/or in-state defendants who should not be parties. That salutary purpose is also served by recognizing an exception to the voluntary-involuntary rule where defendants are improperly, though not fraudulently joined.. We therefore conclude that removal on the basis of an unappealed severance, by a state court, of claims against improperly joined defendants is not subject to the voluntary-involuntary rule.

*Crockett*, 436 F.3d at 533.

The establishment of an exception to the voluntary-involuntary rule in cases of mere misjoinder makes it unnecessary to adopt a fraudulent misjoinder doctrine in the circumstances

presented here. There is no impediment to simply requiring the defendant to raise the issue of improper joinder in the state court. If the state court determines that the in-state/non-diverse defendant has been misjoined under state procedural rules the defendant will have thirty days thereafter to remove the case to federal court. 28 U.S.C. § 1446(b)[3]. While removal must still be sought within one year of the commencement of the action it is doubtful that this would be a significant obstacle to removal in cases where a in-state/non-diverse defendant has been misjoined. Typically the defendant will be able to raise the issue of misjoinder at an early stage and the resolution of the issue will not require significant discovery or the consideration of contested facts.[4] At the same time the primary purpose served by a fraudulent misjoinder doctrine--preventing plaintiffs from blocking removal by joining nondiverse and/or in-state defendants who should not be parties–is served.

A fraudulent misjoinder doctrine is not without costs. It adds an additional level of complexity and litigation to the federal courts' determination of its jurisdiction in removal cases. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3723 at 658. Because the circuit courts have not given any clear guidance as to the exact parameters of the fraudulent misjoinder doctrine substantial litigation will be necessary to define the doctrine itself.

---

[3] Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3723 at 658.

[4] For example, in Louisiana the defendant must raise the issue of misjoinder (improper cumulation) by way of a dilatory exception that must be filed before or with the answer. La.C.C.P. arts. 926 & 928. The exception must be tried and decided in advance of trial of the case. La.C.C.P. art. 929. The misjoinder issue will usually turn on whether there is a "community of interest" between the parties joined and whether each of the joined actions is brought in the proper venue. La.C.C.P. art. 463. "Community of interest" refers to the parties' defenses "arising out of the same facts, or presenting the same factual and legal issues" *Stevens v. Bd. Of Trustees of Police Pension Fund*, 309 So.2d 144 (La. 1975). Thus, absent exceptional circumstances it is unlikely that the one year time limit will come into play.

*Id.*

While the purposes underlying both the fraudulent/improper joinder doctrine and the fraudulent misjoinder doctrine are the same there are material differences in their nature that justify adopting the fraudulent/improper joinder doctrine while rejecting the fraudulent misjoinder doctrine and requiring a defendant to present a misjoinder issue to the state court. Fraudulent/improper joinder addresses the substantive merit of the plaintiff's claims against the spoiler defendant.[5] The fraudulent/improper joinder doctrine provides a mechanism that the federal court can use identify parties against whom the plaintiff has "no possibility of recovery" at an early stage and in a summary manner. There is no similar mechanism available in state court. In state court the issue is whether or not the plaintiff's claims against the spoiler defendant have any merit in fact. Often this determination will not be made at an early stage of the proceedings, but will be made after substantial discovery has been conducted and significant litigation.[6] This creates a likelihood that a significant number of defendants will run afoul of the one year time limit for removal by the time they receive a decision on the merits of the claim against the spoiler defendant.

Additionally, the dismissal of the claims against the spoiler defendant may well involve hotly contested factual issues or genuinely disputed issues of law. If a defendant is allowed to remove the case upon the trial court's dismissal of the claim against the spoiler defendant the

---

[5] As used herein "spoiler defendant" refers to a non-diverse and/or in-state defendant whose presence would preclude removal.

[6] While it is true that some meritless claims may be disposed of promptly by the state court based on the plaintiff's failure to state a cause of action or through summary judgment there does not appear to be any effective means for the federal court to segregate out these cases from others in applying the fraudulent/improper joinder doctrine.

plaintiff would be effectively deprived of a right to appeal the trial court's decision on the merits of his claim.[7] Requiring a defendant to present the issue of misjoinder to the state court does not implicate these same concerns.

As previously discussed, the issue of misjoinder is particularly suited to and early and quick resolution. Further, because the propriety of joinder does not address the merits of the plaintiff's claim there is no risk that the plaintiff will have his claim denied on the merits without any option to appeal. In fact, it is unlikely that the plaintiff will have any right to appeal an adverse decision on joinder.[8]

The fraudulent misjoinder doctrine is wholly unnecessary to accomplish its underlying purpose in this case. In view of this fact, and considering the additional burden such a doctrine would impose on the court this court concludes that the fraudulent misjoinder doctrine is not applicable, at least under the circumstances presented here. *See Osborn v. Metropolitan Life Insurance Co.*, 341 F.Supp.2d 1123 (E.D.Cal. 2004) (Rejecting the fraudulent misjoinder doctrine and concluding that the removing defendant must raise the misjoinder issue in the state court,"and, then, if that court severed the case and diversity then existed, it could seek removal of the cause to federal court."). *See also* Wright, Miller & Cooper, *supra* (". . . confusion easily could be avoided by having the removing party challenge the misjoinder in state court before seeking removal. . . .").

Accordingly, it is recommended that the motion to remand be granted and that this

---

[7] 28 U.S.C. § 1446(d) provides that upon removal "the State court shall proceed no further unless and until the case is remanded."

[8] For example, La.C.C.P. art. 2083 provides that an interlocutory judgment is appealable only when expressly provided by law.

7

matter be remanded to the 38th Judicial District Court for Cameron Parish, Louisiana.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 16th day of February, 2007.

ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE